UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GORDON M.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C24-5965-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

        Plaintiff Gordon M. is the substituted party for his son, Garrett M., who died in March 2024, while his application for disability benefits was pending. Gordon[1] seeks review of the denial of Garrett's application for Disability Insurance Benefits.[2] He contends the ALJ erred by identifying jobs at step five that do not exist in significant numbers; erred in rejecting the medical opinions of Dr. Belous, Dr. Morgan, and Dr. Packer; erred in rejecting Garrett's written description of the limitations his impairments caused him; failed to provide any reasons for rejecting Gordon's testimony; and failed to include the limitations identified by Gerald G., Ph.D., in the hypothetical to the vocational expert. Dkt. 7. The Court **REVERSES** the Commissioner's

---

[1] To avoid confusion, the Court will refer to the substituted plaintiff, Gordon M., and the claimant, Garrett M., by their first names for the remainder of the decision.

[2] Garrett applied for both Disability Insurance Benefits and Supplemental Security Income, but, as he had no minor children living in his household at the time of his death, his claim for SSI did not survive his death. Dkt. 7 at 2.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Garrett was 34 years old on his alleged onset date and 38 years old at the time of his death; he had at least a high school education and had no past relevant work. Tr. 31. He applied for benefits in July 2022, alleging disability as of January 1, 2020. Tr. 280, 282. After his applications were denied initially and on reconsideration, the ALJ conducted a hearing and, on September 24, 2024, issued a decision finding Garrett not disabled. Tr. 17-32. The Appeals Council denied Gordon's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found Garrett had not engaged in substantial gainful activity since the alleged onset date; Garrett had the following severe impairments: lumbar spinal stenosis with lumbar and cervical radiculopathy, osteoarthritis, obesity, anxiety disorder, depressive disorder, trauma, ADHD, and substance/drug addiction/abuse; and these impairments did not meet or equal the requirements of a listed impairment. Tr. 19-20. The ALJ found Garrett had the residual functional capacity to perform less than the full range of light work with numerous additional exertional and non-exertional limitations. Tr. 22. The ALJ found Garrett had no past relevant work but, as there were jobs that exist in significant numbers in the national economy that Garrett could perform, he was not disabled. Tr. 31-32.

---

[3] 20 C.F.R. § 404.1520.

**DISCUSSION**

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Id.*

    **A.**    **Garrett's statements**

Gordon argues the ALJ erred in rejecting Garrett's statements about the limiting effects of his impairments. Dkt. 7 at 7. Garrett completed written disability reports in October 2021, September 2022, April 2023, and December 2023, and function reports in July 2023 and March 2024. Tr. 323-30, 363-70, 371-79, 402-09, 410-18, 425-31. Because Garrett passed away before the hearing, the ALJ had only Garrett's written statements to consider when evaluating Garrett's claims.

Where, as here, the ALJ did not find the claimant was malingering, the ALJ must provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In other words, an ALJ's finding that a claimant's testimony is not credible must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's

testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). A single conclusory statement rejecting a claimant's testimony that fails to identify specifically which statements the ALJ found not credible and why is not sufficient to reject a claimant's testimony, even when that statement is followed by a summary of the evidence. *Id.*

The ALJ found Garrett's allegations were not entirely consistent with the medical evidence, that Garrett's assertions appeared out of proportion and not as debilitating as alleged, and there was nothing in the medical evidence to warrant a more restrictive RFC finding. Tr. 26. The ALJ gave three reasons for discounting Garrett's statements: Garrett received only conservative treatment during the relevant period, the objective evidence in the record supported a greater level of functioning than Garrett alleged, and that Garrett's statements about his activities of daily living were inconsistent with his allegations. Tr. 26-27.

Despite identifying various reasons for discounting Garrett's statements, the ALJ made no specific findings to support these reasons. When assessing Garrett's statements, the ALJ did not identify any of Garrett's disability reports or function reports by citation to the record or identify any specific statements within those reports that he found not credible, instead referring only to Garrett's statements or allegations generally. These general statements do not meet the requirement the ALJ identify what testimony is not credible. *Lester*, 81 F.3d at 834. Lacking any reference to specific statements by Garrett, the ALJ's conclusory findings are not sufficiently specific to allow this Court to determine whether the ALJ discounted Garrett's statements on permissible grounds, or if he arbitrarily discredited them. *Brown-Hunter*, 806 F.3d at 493. The ALJ's conclusory statements, lacking any specificity, are not sufficient to discount Garrett's statements. The Court finds the omission of any specific findings when assessing Garrett's statements constituted harmful legal error.

**B.    Gordon's testimony**

Gordon argues the ALJ erred in rejecting his lay witness evidence. Dkt. 7 at 12. Gordon completed a third-party function report in April 2023 and testified at the hearing. Tr. 49-63, 394-401. The ALJ stated he considered Gordon's third-party function report but found it to be not persuasive as it was not supported or consistent with the medical record. Tr. 31. The ALJ did not further elaborate on the reasons for rejecting Gordon's function report, nor did the ALJ mention or discuss Gordon's hearing testimony.

Gordon argues an ALJ can reject lay witness evidence only by giving specific reasons, based on evidence in the record, that are germane to that witness, and the ALJ therefore erred by failing to give any reasons for rejecting Gordon's statements in the function report and by failing to discuss his hearing testimony at all. Dkt. 7 at 12.

The Commissioner contends the requirement the ALJ provide specific, germane reasons to reject lay witness evidence is based on the prior regulatory scheme, but the current regulations do not require the ALJ to articulate reasons for rejecting lay witness evidence. Dkt. 9 at 15. The Commissioner further asserts any error the ALJ might have committed is harmless because the ALJ addressed Gordon's written statement and because Gordon did not describe any limitations that were not also described by Garrett, Dr. Morgan, or Dr. Packer, in either his function report or his testimony. *Id.*

The relevant portion of the revised regulation provides: "Evidence from nonmedical sources. We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). The plain language of the regulation does not state the ALJ is not required to discuss the weight given to lay witness statements, nor does it state that the ALJ need not provide an explanation for

rejecting a lay witness statement. It states the ALJ is not required to discuss lay witness statements using the framework required for discussing medical opinions.

Interpreting this regulation as eliminating any requirement to provide reasons for discounting lay witness evidence would permit an ALJ to discount, without explanation, probative evidence of disability. Indeed, allowing the ALJ to discount lay witness evidence with no explanation would run afoul of 42 U.S.C. § 405(g), which permits the court to reverse an ALJ decision that is not supported by substantial evidence. The court cannot determine whether a decision is supported by substantial evidence when evidence is rejected without explanation or comment.

The ALJ failed to discuss or provide any reasons for discounting Gordon's hearing testimony. And although the ALJ stated he discounted Gordon's function report because it was not supported or consistent with the record, the ALJ did not identify any evidence to support this finding. Because the Court cannot assess whether the ALJ's decision to discount Gordon's lay witness evidence is supported by substantial evidence or, in the case of his hearing testimony, supported by any reason whatsoever, the Court finds that the ALJ erred in assessing the lay witness evidence.

The Commissioner's argument that any error here is harmless is unavailing. The Commissioner asks the Court to infer that the ALJ's reasons for discounting Garrett's testimony apply equally to the ALJ's decision to discount Gordon's testimony. Dkt. 9 at 16. But the ALJ discounted Garrett's testimony without making findings sufficient for the Court to assess whether the ALJ's reasons were supported by substantial evidence. The Court declines to find that the ALJ's conclusory and unsupported assessment of Garrett's statements is sufficient to support the ALJ's decision to reject Gordon's lay witness evidence, particularly where that

assessment similarly contains no supporting citations to the record and fails to even mention Gordon's hearing testimony.

Gordon's testimony was relevant, competent evidence that the ALJ was required to consider. And under the circumstances of this case, where the claimant was deceased and unable to testify at the hearing, proper consideration of the only testimony given at the hearing, from the claimant's father and substituted party, would call for more care, not less, in the analysis. The ALJ's failure to properly assess Gordon's lay witness evidence was harmful error.

### C.    Medical opinions

Gordon argues the ALJ failed to provide valid reasons for rejecting the opinions of Vyacheslav Belous, M.D., David Morgan, Ph.D., and Brent Packer, M.D., and failed to include limitations opined by Gerald G., Ph.D., despite finding his opinion persuasive. Dkt. 7 at 3, 14. When considering medical opinions, the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in her decision how she considered the factors of supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ is not required to explain how she considered the other factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

   1.   *Dr. Belous*

Dr. Belous examined Garrett in January 2023 and diagnosed chronic low back pain with evidence for lumbar degenerative disc disease and central canal as well as neuroforaminal stenoses. Tr. 680. He opined Garrett could stand and walk at least 2 hours in an 8-hour workday; must alternate sitting and standing every hour; could lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; use of a cane may be justified; could occasionally climb steps and stairs, balance, stoop, crouch, kneel, and crawl; could occasionally reach overhead and forward with no limitation for handling, fingering, or feeling; and limitation to working at heights, around heavy machinery, and extremes of temperature, chemicals, dust, and gasses. *Id.*

The ALJ found this opinion to be not persuasive because it was unsupported and inconsistent with the medical record. Tr. 28. The ALJ found the opinion appeared to overstate the limiting effects of Garrett's severe impairments, noting that the use of a cane was not consistent with the medical evidence of record. *Id.* The ALJ further found that most physical examinations in the record reflected normal range of motion, strength, and gait, and that Garrett did not present with a cane at most appointments. *Id.* The ALJ found additional manipulative and environmental limitations were not supported by the record. *Id.*

Gordon asserts the ALJ improperly rejected the limitations Dr. Belous opined based on the ALJ's own interpretation of Dr. Belous's examination findings. Dkt. 7 at 4. The ALJ cited to medical records that were inconsistent with Dr. Belous's findings on Garrett's range of motion, strength, and gait. Tr. 28 (citing Tr. 636, 641, 797, 845, 972, 1181). But the ALJ otherwise made only conclusory statements about the opinion, without explanation or citation to evidence, including providing no explanation for rejecting the manipulative and environmental limitations Dr. Belous opined. These conclusory statements failed to provide an explanation supported by substantial evidence for finding the opinion unsupported. *Woods*, 32 F.4th at 792.

      Gordon further argues that if the ALJ suspected Dr. Belous failed to provide an honest assessment of Garrett's limitations, ALJ had a duty to recontact the doctor. Dkt. 7 at 4-5. But the ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ made no such finding here, and Gordon has made no showing that Dr. Belous's opinion was ambiguous or that it was inadequate for evaluation. The ALJ's assessment that Dr. Belous appeared to overstate the effects of Garrett's impairments did not trigger the ALJ's duty to develop the record.

      2.    *Dr. Morgan*

      Dr. Morgan examined Garrett in August 2022 and diagnosed social anxiety disorder, major depressive disorder, recurrent episode, moderate, and opioid use disorder in sustained remission. Tr. 491. He opined Garrett had none, mild, or moderate limitations in most areas of basic work activity, with marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and workweek without interruptions from psychologically based symptoms. Tr. 492. He opined Garrett's overall severity rating was moderate. *Id.*

      The ALJ found this opinion to be not persuasive because it was unsupported and inconsistent with the medical record. Tr. 29. The ALJ found the opinion was unsupported by Dr. Morgan's examination, which found, in part, normal speech, cooperative behavior, anxious mood, and normal affect, and Garrett's thought process and content, orientation, perceptions, fund of knowledge, concentration, abstract thought, and insight/judgment were within normal

limits. *Id.* The ALJ concluded these findings do not support the marked limitations Dr. Morgan opined. *Id.* The ALJ also found this opinion was inconsistent with Garrett's treatment record, which was limited to conservative treatment options. *Id.* The ALJ found the lack of progressive treatment options to be inconsistent with the marked limitations Dr. Morgan assessed. *Id.*

Gordon argues the ALJ improperly rejected the opinion based on the ALJ's own interpretation of Dr. Morgan's examination, and Dr. Morgan's abnormal findings on mental status examination could support the marked limitations Dr. Morgan opined. Dkt. 7 at 5. Dr. Morgan's mental status examination findings were all within normal limits except for findings of anxious mood and challenges with recent and immediate memory. Tr. 493-94. The ALJ found that these findings did not support the marked limitations Dr. Morgan opined. Tr. 29. Although Gordon may disagree, the Court cannot say it was unreasonable for the ALJ to conclude that these limited abnormal findings did not support the wide range of marked limitations Dr. Morgan opined.

In addition, Gorgon does not address the ALJ's finding that the conservative treatment Garrett received during the relevant period was inconsistent with the marked limitations Dr. Morgan opined. Again, this was a reasonable interpretation of the evidence that supports the ALJ's assessment of Dr. Morgan's opinion. Gordon has not established that the ALJ erred in finding this opinion unsupported and inconsistent with the medical record.

3.  *Dr. Packer*

Dr. Packer reviewed the record in August 2022 and opined that Garrett had a marked limitation in postural abilities, a severe limitation in gross or fine motor skills, and a significant limitation in the ability to perform activities within a schedule, maintain regular attendance, and

be punctual within customary tolerances. Tr 1366. Dr. Packer opined Garrett could not perform work at any exertional level and would be limited to less than sedentary work. *Id.*

The ALJ found this opinion to be not persuasive because it was unsupported and inconsistent with the record. Tr. 29. The ALJ found that this opinion appeared to vastly overstate the limiting effects of Garrett's impairments and that it was vastly inconsistent with the objective evidence in the record. *Id.* The ALJ noted that most examinations reflect normal range of motion, strength, and gait. *Id.* The ALJ found that Dr. Packer's opinion that Garrett had severe restrictions in fine and gross motor skills would gravely impact independent living and no such significant impact is noted in the record, and that his opinion that Garrett could not perform any activity, even sitting, was inconsistent with the physical examinations in the record. *Id.* The ALJ found that there were occasional references to tenderness and lower extremity edema and hand edema but not to the debilitating level Dr. Packer opined, and many examinations indicated no physical difficulties whatsoever. *Id.*

Gordon argues Dr. Packer's opinions regarding Garrett's ability to use his hands for both fine and gross motor skills was supported by Garrett's diagnosis of De Quervain's Tenosynovitis and findings associated with that diagnosis, including right hand weakness and bilateral hand swelling. Dkt. 7 at 6. While the ALJ again cited to medical records regarding Garrett's range of motion, strength, and gait, the ALJ failed to discuss any specific medical evidence to support rejecting the limitations in fine and gross motor skills Dr. Packer opined. These conclusory citations to the record failed to provide an explanation supported by substantial evidence for finding the opinion unsupported. *Woods*, 32 F.4th at 792.

4.     *Gerald G.*

Gerald G. reviewed the record in October 2023 and opined, in relevant part, that Garrett was able to "understand and remember short, simple instructions" and was limited to "very limited to no public contact." Tr. 113. The ALJ found Gerald G.'s opinion to be generally persuasive and stated the RFC finding included the limitations that Gerald G. and other consulting doctors opined. Tr. 30.

Gordon argues the ALJ failed to include limitations to short and simple instructions and very limited to no public contact in the hypothetical he posed to the vocational expert and in the RFC finding. Dkt. 7 at 14-15. The Commissioner asserts the ALJ reasonably translated these limitations into the RFC finding by limiting Garrett to "simple, routine tasks" and "occasion[al] contact with the general public," and that the failure to use the exact words the doctor used is not error. Dkt. 9 at 9. The Court agrees with the Commissioner. The ALJ is responsible for "translating and incorporating" an opinion "into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The limitations the ALJ included are reasonable translations of the limitations Gerald G. opined as well as the other opinions the ALJ found to be persuasive. The Court declines to find error in the ALJ's failure to include Gerald G.'s specific words.

### D. Step five job numbers

Gordon argues the ALJ erred in finding Garrett not disabled at step five because the jobs the ALJ identified do not exist in substantial numbers. Dkt. 7 at 3. At step five, the Commissioner bears the burden to demonstrate that the claimant can perform a significant number of jobs in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The Ninth Circuit has never set out a

bright-line rule for how many jobs constitute work in "significant numbers" nationally. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). The Ninth Circuit has found 25,000 nationwide jobs was a significant number but characterized that as a "close call." *Gutierrez v Commissioner of Social Security*, 740 F.3d 519, 528-29 (9th Cir. 2014).

The ALJ identified three jobs that Garrett could perform: production assembler, with 14,000 jobs nationwide; agricultural sorter, with 4,000 to 5,000 jobs nationwide; and parking lot attendant, with 2,500 jobs nationwide, for a total of 21,500 jobs nationwide. Tr. 32. Gordon argues that this number, below what the Ninth Circuit has identified as a "close call," leaves the ALJ's step five finding unsupported, as the jobs the ALJ identified do not, in fact, exist in significant numbers. Dkt. 7 at 3.

The Commissioner asserts Gordon's argument is flawed because it is based on a scrivener's error in the ALJ's decision. Dkt. 9 at 16-17. The Commissioner notes the vocational expert testified that there are 25,000 parking lot attendant jobs available in the national economy, arguing that the omission of a zero was a clear scrivener's error. *Id.* In reply, Gordon asserts that while the VE did testify that there are 25,000 parking lot attendant jobs, the ALJ stated that he was skeptical about the job numbers being significant and he intended to "do a little digging around about that to see." Dkt. 10 at 1-2. Gordon points to publicly available jobs data showing reductions in the number of parking lot attendant jobs to 3% to 9% of the total number of those jobs when the limitations in the RFC finding are applied. *Id.* at 3. He argues the Court should assume that the ALJ did the "digging around" that he said he would and found the job numbers eroded to 10% of the number the VE identified. *Id.* at 2-3.

The ALJ included in the hypothetical he posed to the VE limitations that the individual must have the ability to alternate between sitting and standing at will while remaining on task

and can tolerate occasional contact with the general public. Tr. 65. When discussing the parking lot attendant job, the VE stated:

> The occasional on general public is kind of squirrelly in this job, but it could, you know, in terms of looking at the aggregate of the whole day, it would probably be occasional, but there could be periods of time when it would be, you know, more intense . . . . But with the sit/stand option, we'd be looking at about 25,000 of those jobs. I don't – I mean, I – again, I'm using the caveat that, you know, when you say occasional contact with the public, that's very cursory kind of contact, but, you know, over the course of a day, it's probably no more than a third of the time, but it could be at over the course of say an hour, it could be, you know, well more than that.

Tr. 67. At the conclusion of the hearing, the ALJ stated: "I have to say, I'm a little skeptical about the job numbers being significant. There's not a lot there, but I want to do a little digging around about that to see." Tr. 72.

The VE expressly reduced the job numbers to account for the sit/stand limitation. But given the VE's equivocation on the limitation to occasional contact with the public and the ALJ's statement that he intended to "do a little digging around" about the job numbers, the Court cannot say that the ALJ's finding of 2,500 parking lot attendant jobs nationwide is a clear scrivener's error. Rather, the Court finds that, on its face, the decision relies on a total of 21,500 jobs to conclude that there are significant jobs in the national economy that Garrett could have performed. This number is below the 25,000 that the Ninth Circuit has found to be a close call, and the Court concludes that this number does not constitute a significant number of jobs in the national economy. The Court therefore finds that the ALJ erred in finding there are jobs that exist in significant numbers that Garrett could have performed and by concluding Garrett was not disabled at step five.

### E. Scope of remand

Gordon asks the Court to remand this case for an immediate payment of benefits. Dkt. 7 at 16. The Court may remand for an award of benefits where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Courts have flexibility in applying this rule, and may instead remand for further proceedings where the record as a whole "creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

The court finds that not all the conditions for an award of benefits are met. Although the record has been fully developed and the ALJ failed to provide legally sufficient reasons to reject Garrett's and Gordon's testimony, as well as the opinions of Dr. Belous and Dr. Packer, it is not clear that if this evidence were credited as true, the ALJ would be required to find Garrett disabled. Rather, the court finds that further administrative proceedings would be useful in order to allow the ALJ to properly evaluate Garrett's and Gordon's testimony along with the rest of the medical evidence, including Dr. Belous's and Dr. Packer's opinions. Accordingly, the court finds that remand for further administrative proceedings is the proper remedy.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate Garrett's statements, Gordon's testimony, and the opinions of Dr. Belous and Dr. Packer. The ALJ shall further develop the record, redetermine RFC and

1  redo the five-step disability evaluation process as the ALJ deems necessary and appropriate to

2  render a new disability determination and decision.

3      DATED this 17th day of April, 2025.

```
                                        _____
                                        BRIAN A. TSUCHIDA
                                        United States Magistrate Judge
```

7  e

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 16